UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COLLEEN G.,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

Case No. 2:22-cv-00036 TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. §405(g) for judicial review of Defendant's denial of her application for disability insurance ("DIB") and supplemental security income ("SSI") benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

ISSUES FOR REVIEW

A.  Did the ALJ properly evaluate plaintiff's subjective testimony?

B.  Did the ALJ properly evaluate the medical opinion evidence?

BACKGROUND

On May 7, 2015, plaintiff filed applications for DIB and SSI, alleging in both applications a disability onset date of February 14, 2014. Administrative Record ("AR")

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

201-213. Plaintiff's applications were denied upon official review and upon reconsideration. AR 75, 98, 99,100. A hearing was held before Administrative Law Judge ("ALJ") Mary Gallagher Dilley on November 29, 2017. On July 5, 2018, Judge Dilley issued a finding that plaintiff was not disabled. AR 12-32. On May 30, 2019, the Social Security Appeals Council denied plaintiff's request for review. AR 1-5.

On February 27, 2020, the United States District Court, Western District of Washington reversed and remanded (by stipulated motion for remand). AR 823-825.

On remand, a hearing was held before Administrative Law Judge M.J. Adams, (AR 759-792); Judge Adams found plaintiff to be not disabled. AR 728-758 (written decision of the ALJ dated September 17, 2021).

Plaintiff seeks judicial review of the ALJ's September 17, 2021 decision. Dkt. 13.

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. §405(g), this court may set aside the commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019) (internal citations omitted).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

1   of the Court's review. *Id.*

2

3                                    DISCUSSION

4          In this case, the ALJ found that plaintiff had the severe, medically determinable

5   impairments of migraines, fibromyalgia, scoliosis/ degenerative disc disease of the

6   spine, depression/bipolar disorder, anxiety disorder, attention deficit disorder, and post-

7   traumatic stress disorder ("PTSD"). AR 734. Based on the limitations stemming from

8   these impairments, the ALJ found that plaintiff could perform a reduced range of light

9   work. AR 737. Relying on vocational expert ("VE") testimony, the ALJ found that

10  although plaintiff could not perform her past work, she could perform other light,

11  unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at

12  step five that plaintiff was not disabled. AR 750-751.

13         A.   Whether the ALJ properly evaluated plaintiff's subjective testimony

14         Plaintiff contends that the ALJ erred by discounting plaintiff's testimony regarding

15  functional limitations of her impairment. Dkt. 13, pp.19.

16         In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v.*

17  *Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there

18  is objective medical evidence of an underlying impairment that could reasonably be

19  expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d

20  1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence

21  of malingering, the second step allows the ALJ to reject the claimant's testimony of the

22  severity of symptoms if the ALJ can provide specific findings and clear and convincing

23  reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d

24

25

1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

The ALJ is required to state what testimony they determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Although the Court upholds an ALJ's findings that are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). Findings must be sufficiently specific for the Court to evaluate whether the ALJ properly rejected the testimony on permissible grounds – or, improperly discredited the claimant's testimony for reasons that are not based on substantial evidence. *Id; see also, Carmickle v. Commissioner, Social Sec.. Admin.,* 533 F.3d 1155, 1161-1162 (9th Cir. 2008) (rejecting as invalid two reasons stated by the ALJ for finding plaintiff's testimony lacked credibility, because these reasons were not supported by substantial evidence).

Here, the ALJ found that the objective medical evidence could reasonably be expected to produce some of plaintiff's symptoms, but discounted plaintiff's testimony regarding the extent of the symptoms arising from her impairments for the following reasons: (1) plaintiff's allegations regarding her symptoms and limitations were not entirely consistent with her self-reported activity, (2) the record contained evidence suggestive of symptom exaggeration, (3) plaintiff's impairments improved with exercise and treatment, and (4) plaintiff's claims of debilitating symptoms were not supported by medical evidence in the record. AR 740-42.

1   Regarding the ALJ's first reason, an ALJ may discount a claimant's testimony

2   based on daily activities that either contradict her testimony or that meet the threshold

3   for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Only if the

4   level of activity were inconsistent with Claimant's claimed limitations would these

5   activities have any bearing on Claimant's credibility." *Reddick v. Chater*, 157 F.3d at 722

6   (9th Cir. 1998).

7   Here, the ALJ cites plaintiff's attendance at community college and involvement

8   in activities of daily living such as visiting with friends, going grocery shopping,

9   volunteering at an animal shelter, taking the bus, and periods of improvement in her

10  mental health as evidence of a greater degree of functioning than reported. AR 743-44.

11  The ALJ misapprehended the evidence regarding plaintiff's activities. For example, the

12  ALJ noted plaintiff's volunteer service at the animal shelter but did not include the fact

13  that her shifts were for two hours once a week, and plaintiff was "let go" from this

14  position due to frequent absences because of her conditions. AR 45, 775. The ALJ also

15  failed to note that plaintiff would only participate in activities of daily living when

16  symptoms allowed. AR 255.

17  The record also shows that plaintiff's ability to engage in these activities was

18  limited because of her symptoms. For example, plaintiff attended only one class at a

19  time while attending community college, received accommodations, and experienced

20  significant interruptions because of her condition, including missing classes, dropping a

21  quarter due to symptoms, and failing a course due to difficulty concentrating. AR 774-

22  75, 1562. This activity is not inconsistent with plaintiff's claimed limitations of

23  widespread body pain, migraines, fatigue, and memory issues. AR 42, 46, 781.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 5

1       Regarding the ALJ's second reason, a claimant's tendency to exaggerate

2  symptoms is a permissible reason to find that claimant's testimony is less credible.

3  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility

4  determination based on [among other aspects] a tendency to exaggerate, was

5  supported by substantial evidence). Here, the ALJ identified treatment notes from Dr.

6  Brown, Dr. Kawamoto, and Dr. Keyes that suggest symptom exaggeration. AR 745. The

7  ALJ additionally cited several notes indicating that plaintiff's jerking movements may

8  have been voluntary rather than involuntary. *Id*. The ALJ also noted that a January 2020

9  memory and concentration test revealed average or above average scores, contrary to

10  her reports of problems in these areas. *Id*.

11       These observations are taken out of context of the treatment record—when taken

12  in context, they do not suggest symptom exaggeration. *see Ghanim v. Colvin*, 763 F.3d

13  1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick[ ]" items from treatment record

14  without considering them in context of "diagnoses and observations of impairment"). For

15  example, Dr. Kawamoto's February 2015 note that plaintiff's pain behaviors "appear out

16  of proportion" is not indicated in any further treatment notes. AR 320, 439. Additionally,

17  the notes that the ALJ relied on from Dr. Brown and Dr. Keyes are edited portions of

18  treatment notes. Dr. Brown's comment that "Colleen clearly has fibromyalgia, but she

19  has symptoms that way exceed that," reflects plaintiff's additional conditions and

20  symptoms (which is corroborated by the fact that Dr. Brown then referred plaintiff to a

21  psychologist). AR 734, 401.

22       Further, Dr. Keyes' reference to a "disability conviction" was in reference to a

23  treatment plan to improve plaintiff's ability to participate in individual activities. AR 601.

24

25

The ALJ's reliance on inconsistencies between plaintiff's reports and physician's observations of "jerking movements" is also misplaced; these movements were determined to be a result of *anxiety* rather than a *neurological condition*, which explains why they were described as "atypical." AR 373, 436. Therefore, neither the statements about "disability conviction" nor the reference to jerking movements would be substantial evidence of symptom exaggeration.

Regarding the ALJ's finding that plaintiff's symptoms improved with treatment, in appropriate cases this reasoning can serve as a clear and convincing reason for discounting the claimant's testimony. 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment successfully relieving symptoms can undermine a claim of disability). Yet in this case, the ALJ relied on the fact that the plaintiff saw improvement in fibromyalgia symptoms from trigger point injections and cortisone shots, and also cited plaintiff's hesitance to take Lyrica. AR 741. Additionally, the ALJ cited plaintiff's reported ease in symptoms from exercise. *Id*. The ALJ also noted that plaintiff found relief from migraines with tizanidine or a combination of Tylenol, ibuprofen, and coffee. *Id*. Further, the ALJ relied on claimant's reported improvement in mental health symptoms from therapy and medication. AR 742.

Contrary to the ALJ's decision, the record does not support the ALJ's analysis concerning improvement with treatment. For example, the ALJ overlooked that plaintiff did take Lyrica when it became affordable for her, and she worked with her doctor to find an alternative when she began to experience side effects. AR 1168, 1140, 1143,

778, 1303. Additionally, although plaintiff obtained some relief with treatment by injections, the relief would last for only a few months at most before plaintiff experienced severe pain again. AR 353, 346, 1281, 1303, 1367, 1449, 1483, 1491, 1512. These injections were also not recommended for long term use. AR 57.

And, although plaintiff's physical symptoms improved with exercise, the exercise would often exhaust her or exacerbate her pain—she was prescribed to exercise "in a safe way." AR 522, 1167, 1179, 1303, 528. The ALJ did not acknowledge the fact that plaintiff continued to have day long headaches five- to six- times per month and needed to lie down in a dark room in addition to taking medication. AR 1642-43. The ALJ further failed to note there was no documented, sustained improvement in plaintiff's mental health, and any improvement was followed by a decline in her conditions. AR 499, 547, 558, 664, 573. The record, considered as a whole, shows that medication and treatment were not effective in managing plaintiff's symptoms.

Finally, regarding the ALJ's finding that there was a lack of objective evidence corroborating plaintiff's statements about the degree of functional limitations—this finding is not supported by substantial evidence. The ALJ cited imaging results and neurological examination findings—such as stable gait, range of motion, and normal straight leg test results— but these findings do not undermine plaintiff's claims of pain, fogginess, fatigue, and resulting limitations.

The record shows the pain, fogginess, fatigue, and resulting limitations were related to fibromyalgia and migraine headaches; but, contrary to the ALJ's findings, these conditions would not necessarily be diagnosed or observed through abnormal imaging or neurological examination results. AR 740; *see Ghanim v. Colvin*, 763 F.3d

1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick[ ]" items from treatment record without considering them in context of "diagnoses and observations of impairment"); *see also Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017) (noting that those suffering from fibromyalgia have normal muscle strength, sensory functions, and reflexes, and their joints appear normal).

Additionally, since the Court has rejected the ALJ's other reasons to discount plaintiff's testimony, the ALJ may not reject plaintiff's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ erred in discounting plaintiff's testimony and should fully consider it on remand.

B. <u>Whether the ALJ properly evaluated medical opinion evidence</u>

Plaintiff maintains that the ALJ erred in evaluating opinion evidence from treating physician Ashul Pandhi, M.D. and examining physician Shawn Kenderline, Ph.D. who evaluated plaintiff for the Washington State Department of Social and Health Services ("DSHS") Dkt. 13, pp. 19-24.

In assessing an acceptable medical source—such as a medical doctor—the ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of either a treating or examining doctor, and "specific and legitimate" reasons to reject the uncontradicted opinions of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v.*

*Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's

opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons

that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31

(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722

F.2d 499, 502 (9th Cir. 1983)).

### 1.  Dr. Anshul Pandhi

On May 1, 2017, treating physician Dr. Pandhi completed a seven-item

questionnaire providing an opinion concerning plaintiff's physical and mental limitations.

AR 459-60. Dr. Pandhi opined that plaintiff could stand or sit upright for one-hour

intervals in an eight-hour day and estimated that more than 25 percent of a full work day

would be spent off-task. *Id*. Dr. Pandhi additionally indicated that if working full time,

plaintiff would require frequent, unscheduled breaks, and her ability to focus and

concentrate would be impacted even if she were performing simple and repetitive work

tasks. *Id*. Dr. Pandhi did not provide an explanation for these limitations. *Id*.

Dr. Pandhi also opined that plaintiff would more probably than not miss three or

more days of work per month if she attempted even sedentary work on a full time

regular and sustained basis. *Id*. Dr. Pandhi explained that these absences would be due

to "cognition impairment" and "lack of mobility." *Id*.

The ALJ assigned "little weight" to Dr. Pandhi's opinion, reasoning that (1) Dr.

Pandhi had not seen plaintiff since September 2016; (2) Dr. Pandhi did not explain or

offer any basis for his opinion; and (3) Dr. Pandhi's opinion was inconsistent with their

own treatment notes and unsupported by the medical record to the extent it implied

greater physical limitations than the RFC.

Plaintiff contends that the ALJ's first reason is inconsistent with the record because Dr. Pandhi last saw plaintiff in November of 2017, not September of 2016. Dkt. 13, pp. 20. However, the sequence of events shows Dr. Pandhi's May 2017 opinion could not have included observations from the November 2017 appointment. To the extent the ALJ was discounting Dr. Pandhi as an expert altogether, rather than discounting only the May 2017 opinion, plaintiff's point is accurate and salient.

The ALJ's second and third reasons indicate that the ALJ found Dr. Pandhi's opinion to be brief and conclusory. The ALJ is not required to accept the opinion of a physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154-55 (9th Cir. 2020). Here, the ALJ noted that Dr. Pandhi did not provide an explanation for the opinion or note objective findings, clinical observations, or test results to support the opinion. AR 746. The ALJ also relied on the fact the opinion was offered in the form of responses to seven questions, and six of the seven questions simply involved circling an option. AR 745-76. Accordingly, the ALJ found Dr. Pandhi's opinion failed to provide more than brief and conclusory opinions unsupported by explanation or clinical findings.

However, the ALJ is not allowed to disregard a treating physician's opinion solely because the opinion is brief and conclusory -- the ALJ is required to consider the context of the record. *Burrell*, 775 F.3d at 1140. Here, the ALJ stated that Dr. Pandhi's opinion was inconsistent with plaintiff's longitudinal record, which the ALJ characterized as showing no more than minor abnormalities on physical or mental examinations. AR 746 (citing AR 316, 320, 323, 325, 327, 332, 335, 338, 343, 345, 347, 354, 357, 362,

368, 373, 376, 397, 405, 427, 431, 433, 436, 487, 501, 523, 581-82, 589, 614, 634, 643, 651, 653, 706, 708, 1081, 1385, 1557, 1577).

But this history of minor abnormalities is consistent with a finding of fibromyalgia which is diagnosed entirely on the basis of the patient's reports of pain and other symptoms. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). There are no laboratory tests to confirm a fibromyalgia diagnosis. *Id*. Therefore, substantial evidence does not support the ALJ's decision to discount Dr. Pandhi's opinion, because the ALJ failed to take into account the unique nature of fibromyalgia.

The ALJ erred in rejecting the opinions Dr. Pandhi provided in response to the questionnaire because Dr. Pandhi's opinion is supported by the medical record, as well as Dr. Pandhi's treatment history with plaintiff.

### 2.  Dr. Shawn Kenderline

Examining physician Dr. Kenderline offered three opinions concerning plaintiff's mental limitations. On December 19, 2017, Dr. Kenderline opined that plaintiff could perform most basic work activity with a mild or moderate limitation, with a more significant limitation in performing detailed tasks. AR 1029. He also assigned an overall severity rating of "moderate." AR 1029. On August 3, 2018, he reported consistent findings and again assigned an overall severity rating of "moderate." AR 1033-34.

On February 18, 2020, Dr. Kenderline opined that plaintiff had a marked limitation in performing detailed tasks, communicating and performing effectively, and completing a normal workday without interruption but otherwise again noted a mild or moderate limitation in other basic work activities. AR 1547-48. He again assigned an overall severity rating of "moderate." *Id*.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

The ALJ assigned "significant weight" to the 2017 and 2018 opinions, finding them well-supported by Dr. Kenderline's examination findings and consistent with the record as a whole. AR 749. However, the ALJ assigned "little weight" to the 2020 opinion, reasoning that it described a significant decrease in functioning from previous assessments without evidentiary support. *Id.*

Plaintiff asserts that the ALJ failed to include any limitations in the RFC regarding plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual despite assigning Dr. Kenderline's 2017 and 2018 opinions (which indicated a moderate limitation in these areas) significant weight. Dkt. 13, pp. 13-14. The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

While the ALJ gave significant weight to Dr. Kenderline's opinions, they did not discuss the exertional limitation, and the Court therefore cannot determine if the ALJ gave significant weight to this limitation and incorporated this limitation into the RFC assessment or rejected the limitation. The ALJ failed to explain why their interpretation of plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual -- rather than Dr. Kenderline's -- is correct. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Therefore, the ALJ erred in the assessment of Dr. Kenderline's 2017 and 2018 opinions.

Plaintiff also asserts error with respect to the ALJ's assessment that Dr. Kenderline's 2020 opinion was entitled to little weight; the ALJ discounted the 2020 opinion because it describes a significant decrease in functioning, compared to his previous assessments, but does not provide an explanation to account for the decrease. Because Dr. Kenderline's opinion did not provide any opinion or explanation for this decrease, the ALJ did not err by assigning little weight to Dr. Kenderline's 2020 opinion.

C. Remand for award of benefits

For the foregoing reasons, the Commissioner's decision in this case is REVERSED and this matter is REMANDED to the Commissioner to award benefits. "'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

1   *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

2   2014)).

3         The Ninth Circuit emphasized in *Leon v. Berryhill,* 80 F.3d 1041, 1045 (9th Cir.

4   2017), that even when each element is satisfied, the district court has discretion to

5   remand for further proceedings or for award of benefits.

6         Here, plaintiff asks that the Court remand for an award of benefits based on the

7   ALJ's errors in evaluating plaintiff's subjective testimony and the medical opinion

8   evidence. Providing another opportunity to assess improperly evaluated evidence does

9   not qualify as a remand for a "useful purpose" under the first part of the credit as true

10  analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595

11  (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an

12  unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

13        If the opinions of Dr. Pandhi and Dr. Kenderline were credited as true, particularly

14  Dr, Pandhi's opinion that plaintiff would be off task for at least 25 percent of the day,

15  would require frequent, unscheduled breaks, and would have severe restrictions on

16  being able to sit, stand, or walk, the ALJ would be required to find plaintiff disabled on

17  remand. *See Trevizo v. Berryhill,* 871 F.3d at 683 (further delays would be unduly

18  burdensome); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not

19  remand for further proceedings where, taking the claimant's testimony as true, the ALJ

20  would clearly be required to award benefits.").

21        Likewise, crediting as true plaintiff's statements about the severity of her

22  symptoms and the work-related limitations she suffered because of those symptoms,

23  remand for an award of benefits is warranted.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 15

Accordingly, remand for an award of benefits is the appropriate remedy.

Dated this 6th day of September, 2022.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 16